**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

DANIEL PULLER, individually
and on behalf of all others similarly situated,

Plaintiff,

v.

LEGENDS OWO, LLC,

Defendant.

Civil Action No. 1:24-CV-00209-RA

Hon. Ronnie Abrams

# DEFENDANT LEGENDS OWO, LLC'S MEMORANDUM OF LAW IN REPLY TO PLAINTIFF DANIEL PULLER'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S CLASS ACTION COMPLAINT PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE 12(b)(1) AND 12(b)(6)

Matthew Gurvitz (admitted *pro hac vice*)
WILLKIE FARR & GALLAGHER LLP
2029 Century Park East
Los Angeles, CA 90067
310-855-3000
mgurvitz@willkie.com

Philip F. DiSanto
WILLKIE FARR & GALLAGHER LLP
787 Seventh Avenue
New York, NY 10019
212-728-8000
pdisanto@willkie.com

*Counsel for Defendant Legends OWO, LLC*

# TABLE OF CONTENTS


INTRODUCTION ....... 1

ARGUMENT ....... 1

I. PLAINTIFF LACKS ARTICLE III STANDING ....... 1

A. Plaintiff Does Not Sufficiently Allege A Concrete Injury ....... 1

B. Plaintiff Does Not Sufficiently Allege An Informational Injury ....... 3

II. PLAINTIFF FAILS TO PLAUSIBLY ALLEGE A VIOLATION OF THE STATUTE AND THUS FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED ....... 5

A. The Complaint Shows That Legends Disclosed The Total Cost Of Plaintiff's Tickets In The Ticket Listing Prior To Their Selection For Purchase ....... 5

B. The Complaint Shows That The Ticket Price Did Not Increase During The Purchase Process ....... 6

C. The Complaint Shows That The Ticket Price Was Clearly And Conspicuously Disclosed ....... 7

D. Plaintiff Has Not And Cannot Allege Any Injury As A Result Of The Alleged Violation ....... 8

III. THE STATUTE DOES NOT PROVIDE FOR THE ASSERTION OF CLAIMS BY PLAINTIFF ON BEHALF OF NONRESIDENTS ....... 9

IV. CONCLUSION ....... 10

# TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Carter v. HealthPort Technologies, LLC*,
822 F.3d 47 (2d Cir. 2016) ........ 2

*Charles v. Color Factory, LLC*,
No. 1:24-cv-00322, 2024 WL 1693236 (S.D.N.Y. Apr. 19, 2024) ........ 3, 9

*Dillon v. U-A Columbia Cablevision of Westchester*,
740 N.Y.S.2d 396 (App. Div. 2002) ........ 9

*DRMAK Realty LLC v. Progressive Credit Union*,
18 N.Y.S.2d 618 (App. Div. 2015) ........ 9

*Fonte v. Bd. of Managers of Cont'l Towers Condo.*,
848 F.2d 24 (2d Cir. 1988) ........ 4

*Friedl v. City of N.Y.*,
210 F.3d 79 (2d Cir. 2000) ........ 4

*Gomez-Jimenez v. New York L. Sch.*,
943 N.Y.S.2d 834 (Sup. Ct. 2012), *aff'd*, 956 N.Y.S.2d 54 (App. Div. 2012) ........ 8

*Goshen v. Mut. Life Ins. Co. of New York*,
730 N.Y.S.2d 46 (App. Div. 2001), *aff'd,* 774 N.E.2d 1190 (N.Y. 2002) ........ 10

*Harty v. W. Point Realty, Inc.*,
28 F.4th 435 (2d Cir. 2022) ........ 4

*Louis Vuitton Malletier S.A. v. LY USA, Inc.*,
676 F.3d 83 (2d Cir. 2012) ........ 5

*Nicosia v. Amazon.com, Inc.*,
834 F.3d 220 (2d Cir. 2016) ........ 7

*Shelton v. CIOX Health, LLC*,
No. 1:17-cv-00808, 2018 WL 4211447 (E.D.N.Y. July 20, 2018) ........ 8, 9

*Small v. Lorillard Tobacco Co.*,
720 N.E.2d 892 (N.Y. 1999) ........ 8

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016) ........ 2

*Tavor v. Troia*,
No. 1:23-cv-07724, 2024 WL 360571 (E.D.N.Y. Jan. 31, 2024) ........ 4

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021)....................................................2, 4

*Tyler v. Hennepin County, Minnesota*,
598 U.S. 631 (2023)....................................................2

*United States v. Kozeny*,
493 F. Supp. 2d 693 (S.D.N.Y. 2007), *aff'd*, 541 F.3d 166 (2d Cir. 2008) ....................6

*Wnet v. Aereo, Inc.*,
871 F. Supp. 2d 281 (S.D.N.Y. 2012)....................................................4

*Wurtz v. Rawlings Co., LLC*,
No. 1:12-cv-01182, 2016 WL 7174674 (E.D.N.Y. Nov. 17, 2016) ....................8

**Other Authorities**

Fed. R. Civ. P. 12(b)(1)....................................................1

Fed. R. Civ. P. 12(b)(6) ....................................................1

*Purchase*, Black's Law Dictionary (11th ed. 2019) ....................................................6

## INTRODUCTION

Plaintiff[1] did not suffer any concrete injury when he visited Defendant's OWO website and purchased two tickets, as he presumably obtained the benefit of his bargain. In his April 19, 2024 Opposition ("Opposition" or "Opp."), ECF No. 24, Plaintiff attempts to muddy the waters through, among other things, his introduction of new allegations that were not previously pled in the Complaint and by inappropriately peppering the statements of legislators regarding the Statute throughout his brief, despite the Statute's clear language—all in the hopes of convincing this Court to find standing where none exists. The Court should put an end to Plaintiff's attempt at seeking relief for a nonexistent harm.

## ARGUMENT

### I. PLAINTIFF LACKS ARTICLE III STANDING

#### A. Plaintiff Does Not Sufficiently Allege A Concrete Injury

Plaintiff's Complaint fails to plausibly assert a concrete injury. The Complaint's allegations demonstrate that Plaintiff presumably received the benefit of his bargain when he purchased the OWO tickets, and was not made any worse as a result of paying the processing fee. In deciding to purchase a ticket from the OWO website *even after* being made aware of the processing fee, Plaintiff's conduct demonstrates that he was not injured. That Plaintiff paid a fee which he alleges is "unlawful" is of no consequence to whether he actually suffered any concrete injury, as Plaintiff does not allege in his Complaint that he could have purchased his tickets at a cheaper price elsewhere ***or*** that he could have purchased the tickets without paying the processing fee. Without these required assertions, Plaintiff's case amount to nothing more than a bare

---

[1] Capitalized, but undefined terms used herein have the same meaning as used in the March 8, 2024 Defendant's Memorandum of Law in Support of its Motion to Dismiss Plaintiff's Class Action Complaint Pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6). ECF No. 14.

allegation of a procedural violation "divorced from any concrete harm." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 341 (2016).

Noticeably absent from Plaintiff's Opposition is any reference to *TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021), the U.S. Supreme Court's most recent landmark decision on standing that undercuts Plaintiff's entire theory. As the Court in *Ramirez* explained, there is "an important difference . . . between (i) a plaintiff 's statutory cause of action to sue a defendant over the defendant's violation of federal law, and (ii) a plaintiff 's suffering concrete harm because of the defendant's violation of federal law." *Id*. at 426-27. Plaintiff fails to demonstrate how the allegations in his Complaint appreciate that distinction. Ignoring *Ramirez* altogether and then citing to inapposite case law[2] does not change the fact that Plaintiff is required to connect a concrete injury to the alleged statutory violation. Plaintiff alleges that he paid a fee that was made unlawful by the Statute. He does not allege anything further. Under *Ramirez*, Plaintiff has not sufficiently pled a concrete injury.

Perhaps recognizing the weakness of his standing argument, Plaintiff attempts to shift the Court's attention to the reasonableness of the "processing fee," claiming that "OWO never tells [Plaintiff] what its 'Processing Fee' is for" and that "it is impossible for [Plaintiff] to determine whether it is a reasonable service charge for 'special services' or some other kind of unlawful

---

[2] The cases on which Plaintiff rely to argue that he paid an "illegal fee" are distinguishable. In *Carter v. HealthPort Technologies, LLC*, 822 F.3d 47, 52-53 (2d Cir. 2016), the plaintiff alleged that the defendant hospital violated a New York law that *expressly prohibited* per page charges exceeding seventy-five cents for medical records. Further, the issue in *Carter* was not about whether payment of a fee that was expressly made unlawful afforded the plaintiff with standing. Rather, the issue was whether the plaintiff suffered an injury in fact when she requested her medical records and paid the illegal fee *through her attorney.* 822 F.3d at 57-59. In *Tyler v. Hennepin County, Minnesota*, 598 U.S. 631, 634-37 (2023), the question facing the U.S. Supreme Court was whether the plaintiff suffered an injury when the defendant county illegally appropriated the surplus from its sale of the plaintiff's home to satisfy a tax bill in violation of the Fifth Amendment.

premium." Opp. at 10-11. The Court should reject Plaintiff's attempt to move the standing goalpost. Plaintiff's Complaint does not allege that he did not know what the processing fee was for, nor does it allege that the processing fee is not reasonable.

Plaintiff also submitted a notice of supplemental authority to inform this Court of Judge Jed Rakoff's recent decision in *Charles v. Color Factory, LLC*, No. 1:24-cv-00322, 2024 WL 1693236 (S.D.N.Y. Apr. 19, 2024), which is fundamentally different that the allegations here. In *Color Factory,* the Court found that the plaintiff alleged a concrete harm where the defendant did not disclose an $8.99 combined taxes and processing fee until *after* the plaintiff had already entered her personal information and nearly completed the purchase process. *Id.* at *1-2. Furthermore, the defendant did not delineate how much of the $8.99 was attributable to either taxes or processing fees. *Id.* Here, the processing fee at issue was disclosed multiple times prior to a ticket's selection for purchase, *see, e.g.*, ECF No. 1 ¶¶ 12, 15, Figs. 4, 7, the separate charges for tax and the processing fee were clearly delineated, *id.* ¶ 15, Fig. 7, and the fee was disclosed before Plaintiff entered his personal information or credit card information, *id.*

Accordingly, Plaintiff did not pay an "illegal fee" when he purchased OWO tickets from Defendant's website and thus, lacks Article III standing to seek relief in federal court.

**B. Plaintiff Does Not Sufficiently Allege An Informational Injury**

Plaintiff also fails to plausibly allege an informational injury. For the first time, Plaintiff claims in his Opposition that he suffered an informational injury under the theory that he did not have "all-in pricing at the beginning of the transaction" and was consequently "deprived of the ability to shop around for the best price for his trip to the [OWO] (either from Defendant's website or a third-party website like TripAdvisor or Booking.com) or for a comparable trip to another observatory or another entertaining activity, and thus overpaid." Opp. at 8. Plaintiff's Complaint,

however, is devoid of these allegations. Accordingly, Plaintiff's attempt to introduce new factual allegations in the Opposition should be rejected by the Court. *See*, *e.g.*, *Friedl v. City of N.Y.*, 210 F.3d 79, 83-84 (2d Cir. 2000) (noting that a court errs when it "relies on factual allegations contained in legal briefs or memoranda in ruling on a 12(b)(6) motion to dismiss." (citing *Fonte v. Bd. of Managers of Cont'l Towers Condo.*, 848 F.2d 24, 25 (2d Cir. 1988)).

Putting the issue of pleading new allegations in his Opposition aside, Plaintiff was not deprived of any information prior to purchasing his OWO tickets because pursuant to the Statute, the processing fees were disclosed well before any tickets were selected for purchase—a point that Plaintiff concedes when he alleges that the disclosure was not clear and conspicuous. *See* ECF No. 1 ¶ 33. But even where a plaintiff is "deprived of information to which he is entitled by [statute], he must also allege 'downstream consequences from failing to receive the required information' in order to have an Article III injury in fact." *Harty v. W. Point Realty, Inc.*, 28 F.4th 435, 444 (2d Cir. 2022) (quoting *TransUnion LLC*, 594 U.S. at 442). Here, Plaintiff does not allege that he "acted, or failed to act, to his detriment in reliance on the [allegedly] incomplete information . . . ." *Tavor v. Troia*, No. 1:23-cv-07724, 2024 WL 360571, at *4 (E.D.N.Y. Jan. 31, 2024). Nor can Plaintiff make any such allegation. Defendant's website provided Plaintiff with information regarding its processing fees well before Plaintiff purchased a ticket.

In what appears to be a pattern to "make up the difference" for the Complaint's shortcomings, Plaintiff introduces the statements of certain state legislators and part of the Statute's legislative history to persuade the Court that he has standing. Opp. at 8-9, 11-12, 26. The Court should not consider Plaintiff's introduction of extra-statutory statements where, as here, the Statute is not ambiguous. *See e.g.*, *Wnet v. Aereo, Inc.*, 871 F. Supp. 2d 281, 284 (S.D.N.Y. 2012) ("If the Court can ascertain the plain meaning of the statutory provision from the text and

statutory structure, it need not consider other sources." (citing *Louis Vuitton Malletier S.A. v. LY USA, Inc.*, 676 F.3d 83, 108 (2d Cir. 2012))). Defendant's website complied with the plain language of the Statute. For all of these reasons, Plaintiff did not suffer an informational injury.

## II. PLAINTIFF FAILS TO PLAUSIBLY ALLEGE A VIOLATION OF THE STATUTE AND THUS FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED

Plaintiff avers that Legends violated the Statute in three ways: (1) failing to "disclose the 'total cost of a ticket, inclusive of all ancillary fees, that must be paid in order to purchase the ticket' after a ticket is selected"; (2) increasing "the price of [the] tickets during the purchase process"; and (3) failing "to disclose in a clear and conspicuous manner the portion of the ticket price stated in dollars that represents a service charge, or any other fee or surcharge to the purchaser." ECF No. 1 ¶¶ 28-30 (quoting ACAL § 25.07(4)). A closer inspection of the Complaint, however, confirms that the opposite is true.

### A. The Complaint Shows That Legends Disclosed The Total Cost Of Plaintiff's Tickets In The Ticket Listing Prior To Their Selection For Purchase

Plaintiff's claim that the "total cost of the ticket is not disclosed prior to being selected for purchase" is rebutted by the embedded figures/images in the Complaint. Figure 2 does not represent the point at which a ticket is selected, but rather, provides visitors with information regarding a variety of experiences that are available upon visiting OWO—indeed, prospective purchasers are given an opportunity at Figure 2 to narrow down their options in order to ultimately select a ticket for purchase. Plaintiff does not explain how a ticket has been selected for purchase in Figure 2 when a visitor has not even selected a ticket *type*, which occurs at Figure 4. *See* ECF No. 1 ¶ 11, Fig. 4. Figure 4 is an opportunity for a prospective purchaser to assess the various starting price points for "Adult Standard," "Senior Standard," and "Youth Standard" tickets, *and even then*, a ticket has still not been selected for purchase as Plaintiff suggests. *See id.* Even more,

Defendant discloses the processing fee in Figure 4, well before a ticket has been selected for purchase. *Id*.

Despite Plaintiff's assertions to the contrary, the purchase process, *i.e.,* selection of a ticket for purchase, does not begin until *after* a visitor clicks the checkbox with the site's terms/conditions, and then the green "Checkout" button in Figure 7. *See id*. ¶ 14, Fig. 7. Figure 7, which includes the subtotal, processing fee, tax, and total amount, is the point at which a prospective purchaser views the ticket listing prior to making a determination as to whether they will select the ticket for purchase. The Statute does not define "purchase" and "[w]here no definition is provided for a term in [a] statute, courts 'first consider the ordinary, commonsense meaning of the words.'" *See United States v. Kozeny*, 493 F. Supp. 2d 693, 701 (S.D.N.Y. 2007), *aff'd*, 541 F.3d 166 (2d Cir. 2008). The ordinary, dictionary definition of "purchase" is "[t]he act or instance of buying." *Purchase*, Black's Law Dictionary (11th ed. 2019). The process of "buying" a ticket begins when a visitor begins to pay for it, which corresponds to Figure 7 in the Complaint. *See* ECF No. 1 ¶ 14, Fig. 7. Therefore, Defendant disclosed the total cost of the tickets in the ticket listing, inclusive of all ancillary fees, prior to the ticket being selected for purchase and did not violate the Statute.

### B. The Complaint Shows That The Ticket Price Did Not Increase During The Purchase Process

Plaintiff's claims that the purchase process begins at Figures 2-A and 2-B is untenable. Under Plaintiff's theory, when a prospective purchaser visits the ticket marketplace, the purchase process—or the *act of buying a ticket*—begins when the prospective purchaser merely looks at the price. Put another way, the process of purchasing a ticket begins as soon as the prospective purchaser *sees* the price without acting further. But Plaintiff's claims fail because the purchase process begins at Figure 7 in the Complaint when the prospective purchaser has confirmed their

intent to select a ticket for purchase. *See id.* ¶ 14, Fig. 7. And as Defendant has already made clear in its Motion to Dismiss, between the period when a prospective purchaser affirmatively clicks the terms/conditions and green "Checkout" button and is subsequently taken to a page to input their payment information, the ticket price does not increase. *See* ECF No. 14 at 17. Accordingly, Plaintiff's claims that the price increased during the purchase process should be rejected by the Court.

### C. The Complaint Shows That The Ticket Price Was Clearly And Conspicuously Disclosed

Plaintiff argues that Defendant has not satisfied ACAL § 25.07(4)'s requirement that the processing fee be "'disclose[d] in a clear and conspicuous' manner.'" Opp. at 17. To support its claims, Plaintiff relies on a Second Circuit Court of Appeals decision that applied Washington State law. *See Nicosia v. Amazon.com, Inc.*, 834 F.3d 220 (2d Cir. 2016). But even *Nicosia* is distinguishable. There, the court found that the website at issue included "between fifteen and twenty-five links on the Order page . . . various text . . . displayed in at least four font sizes and six colors . . ." and further included "customers' personal address, credit card information, shipping options, and purchase summary" all on one page. *Id*. at 237.

Here, as Figure 4 (where a processing fee disclosure is made) in the Complaint demonstrates, the font size is uniform and the webpage is clean, uncluttered, and spaced out. *See* ECF No. 1 ¶ 11, Fig. 4. Further, the processing fee disclosure is preceded by a bolded header in capital letters, and slightly darker text, that says, "PLEASE NOTE . . ." followed by the disclosure. Prospective purchasers do not have an option of scrolling past the disclosure because the entire screen is visible all at once. Plaintiff appears to argue that Defendant should have made the disclosure *clearer* and *more conspicuous* than it already appears. Plaintiff's claim that the disclosure was not clear and conspicuous should be rejected by the Court.

**D. Plaintiff Has Not And Cannot Allege Any Injury As A Result Of The Alleged Violation**

Quite tellingly, the Opposition does not even attempt to address Defendant's claims that under New York consumer protection laws, a plaintiff must allege that a defendant's consumer-oriented deceptive acts or practices "resulted in actual injury to the plaintiff." *Gomez-Jimenez v. New York L. Sch*., 943 N.Y.S.2d 834, 841 (Sup. Ct. 2012), *aff'd*, 956 N.Y.S.2d 54 (App. Div. 2012); *see also* ECF No. 14 at 18-20. Plaintiff does not cite once to *Small v. Lorillard Tobacco Co*., 720 N.E.2d 892, 899 (N.Y. 1999), which Defendant's Motion to Dismiss discusses in detail. Mainly, in *Small*, the New York Court of Appeals found that the gravamen of the plaintiff's claim of injury was that the defendants' allegedly deceptive conduct prevented plaintiffs from making free and informed choices as consumers. *Small,* 720 N.E.2d at 898. The *Small* court rejected the plaintiff's theory of injury and held that it is not enough to plead that one would not have purchased a product, but for a deceptive practice. To recover, the deception must have caused an injury. Here, Plaintiff asserts a similar theory against Defendant, which this Court should also reject for the reasons set out in *Small*.

Despite Plaintiff's attempt to claim otherwise, "a voluntary payment of an improper charge made with full knowledge of the facts cannot be recovered because it was made pursuant to a mistake of law." *Shelton v. CIOX Health, LLC*, No. 1:17-cv-00808, 2018 WL 4211447, at *2-5 (E.D.N.Y. July 20, 2018); *see also Wurtz v. Rawlings Co., LLC*, No. 1:12-cv-01182, 2016 WL 7174674, at *6 (E.D.N.Y. Nov. 17, 2016) (collecting cases applying voluntary payment doctrine to statutory claims). Here, Plaintiff raises his mistake of law for the first time in his Opposition. Opp. at 26-27. Notwithstanding this untimely revelation, it is undisputed that following Defendant's disclosure *and* Plaintiff's awareness of the processing fee, Plaintiff *still* voluntarily

opted to pay the total cost of two tickets.[3] Accordingly, the Court can, and should, find that the voluntary payment doctrine bars Plaintiff's claims at this stage of the proceedings. *See, e.g.*, *Dillon v. U-A Columbia Cablevision of Westchester*, 740 N.Y.S.2d 396, 397-98 (App. Div. 2002) (applying voluntary payment doctrine at motion to dismiss stage); *Shelton*, 2018 WL 4211447, at *2-5 (same); *DRMAK Realty LLC v. Progressive Credit Union*, 18 N.Y.S.2d 618, 622 (App. Div. 2015) (affirming dismissal of claims barred by voluntary payment doctrine on motion to dismiss).

## III. THE STATUTE DOES NOT PROVIDE FOR THE ASSERTION OF CLAIMS BY PLAINTIFF ON BEHALF OF NONRESIDENTS

As a matter of law, the Court should reject Plaintiff's attempt to maintain a cause of action for individuals who did not purchase an OWO ticket within the State of New York. Plaintiff argues that "[t]he law expressly says it applies to all ticket sales to 'events occurring in New York state, **regardless of the territories of origin of both the buyer and seller**.'" Opp. at 22. Not so. Plaintiff's claim is based on a cherry picking of a phrase within a paragraph that, when read together, clearly demonstrates that it applies ***solely*** to ***ticket resellers*** domiciled in New York or any other state, and **not** to any person who purchases a ticket outside of New York. The paragraph in which Plaintiff's carefully selected phrase appears leaves no room for even Plaintiff's tortured interpretation:

> The legislature further finds that many ticket resellers advertise and sell tickets to places of entertainment within the boundaries of New York state often **from locations outside the state**, without adhering to the provisions of this article. **The legislature objects to any claim that businesses domiciled outside New York state are exempted from this statute when selling tickets to events occurring in New York state, regardless of the territories of origin of both the buyer and seller.** It is the legislature's intent that all governmental bodies charged with enforcement of this article, including the attorney general of New York state have

[3] To support his position that this Court should not dismiss his claims under the voluntary payment doctrine, Plaintiff relies, in part, on a legislator's statement that was submitted to the court in *Color Factory*. But as Defendant has already discussed, *Color Factory* is factually distinguishable. S*ee supra* ARGUMENT § I(A).

> the authority to regulate the activities of all persons reselling tickets to venues located within this state to the full extent of the state's powers under the federal and state constitutions and that this article be construed in light of this purpose.

ACAL § 25.01. (emphasis added). The plain language makes the legislature's intent clear—ticket resellers who are domiciled both in and outside of New York are not exempted from the statute, *irrespective* of where a buyer is located. This interpretation is bolstered by the next sentence in the paragraph, which notes that "all governmental bodies . . . including the attorney general of New York state" have the authority to regulate ***all ticket resellers***. There is no reference to the rights of out of state persons who purchase tickets because the legislature did not intend to provide non-New York residents with those rights. Indeed, New York courts "recognize the settled rule of statutory interpretation, that unless expressly stayed otherwise, 'no legislation is presumed to be intended to operate outside the territorial jurisdiction of the state [] enacting it.'" *Goshen v. Mut. Life Ins. Co. of New York*, 730 N.Y.S.2d 46, 47 (App. Div. 2001), *aff'd,* 774 N.E.2d 1190 (N.Y. 2002).

Because ACAL § 25.01 does not provide for a cause of action for unnamed plaintiffs who purchased OWO tickets outside of the State of New York, the Court should reject Plaintiff's attempt to assert such claims.

## IV. CONCLUSION

For the reasons set forth above, Defendant respectfully requests that the Court dismiss Plaintiff's Complaint in its entirety.

Dated: New York ,NY
May 10, 2024

Respectfully submitted,

WILLKIE FARR & GALLAGHER LLP

By: /s/ *Matthew Gurvitz*

Matthew Gurvitz (admitted *pro hac vice*)
WILLKIE FARR & GALLAGHER LLP
2029 Century Park East
Los Angeles, CA 90067-2905
310-855-3000
mgurvitz@willkie.com

Philip DiSanto
WILLKIE FARR & GALLAGHER LLP
787 Seventh Avenue
New York, NY 10019
212-728-8000
pdisanto@willkie.com

*Attorneys for Defendant,*
*Legends OWO, LLC*